UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

KENNIE D. C. C.,[1]

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

Case No. 8:25-cv-01595-MAR

MEMORANDUM AND ORDER

Plaintiff Kennie D. C. C. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Disability Insurance Benefits. (Administrative Record ("AR") 226-29).

For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order.

////

**I.**

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

**PROCEDURAL HISTORY**

On January 20, 2020, Plaintiff filed her application alleging a disability onset beginning November 21, 2019.[2] AR 226–29. Applicant's claim was denied on June 22, 2020, and upon reconsideration on November 13, 2020. AR 129–32, 136–41. On January 11, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR at 142.

On July 18, 2022, Plaintiff, represented by counsel, testified before an ALJ. AR at 38, 43–72. A vocational expert ("VE") also testified. AR at 67–72. On October 12, 2022, the ALJ issued a decision denying the application. AR at 23–42. Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision, which the Council denied on June 14, 2023. AR 12–17. After Plaintiff filed a complaint in this district for review of the determination, a magistrate judge entered judgment reversing and remanding for further proceedings consistent with the terms of a stipulation for remand. Cardenas v. Kijakazi, 8:23-cv-01319-MRW. AR 1797–800.

On remand, the ALJ conducted an oral hearing on November 6, 2024. AR 1727–51. A supplemental hearing was conducted on May 22, 2025. AR 1703–26. The ALJ published an unfavorable decision on May 22, 2025. AR 1678–1702.

On July 22, 2025, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1. This matter is before the Court after both parties consented to proceed before a Magistrate Judge, in accordance with 28 U.S.C. § 636(c). Dkts. 6, 9–10.

////

////

////

////

////

[2] The instant action concerns this 2020 application. Plaintiff also, however, filed a prior application alleging an onset date of November 30, 2016. AR 1754. A hearing related to that application was held on September 17, 2019. Id.

## II.

## PLAINTIFF'S BACKGROUND

Plaintiff was forty-six years old on the alleged onset date.[3] AR 1693. Plaintiff has four or more years of college, and prior work history in the dental field. AR 268. She alleges disability based on (1) "PTDS"; (2) "fibromyalgia"; (3) "kidney stones"; (4) "ovary cyst"; (5) "carpal tunnel syndrome fight[sic] wrist"; (6) "arthritis in both thumbs"; and (7) "back shoulder pain." AR 267.

## III.

## STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months. 42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. § 404.1520. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

[3] Accordingly, Plaintiff was considered a "younger person" on her alleged onset date and at the hearing. AR 1693; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "under age [fifty]"); 20 C.F.R. § 416.963(c).

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[4]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. § 404.1520(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Ford, 950 F.3d at 1148; Bustamante, 262 F.3d at 953–54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, accounting for the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(g)(1); Tackett, 180 F.3d at 1098–99, 1100; Reddick, 157 F.3d at 721.

## IV.

## THE ALJ'S DECISION

### A. STEP ONE

At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity during the period from her alleged onset date of November 21, 2019 through her date last insured of December 31, 2021." AR 1683.

---

[4] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

**B. STEP TWO**

At step two, the ALJ found that Plaintiff has the following severe impairments: (1) "fibromyalgia"; (2) "obesity"; (3) "status post kidney stone removal"; (4) "carpometacarpal joint arthritis"; (5) "bilateral carpal tunnel syndrome"; and (6) "cervical spine stenosis." AR 1684.

**C. STEP THREE**

At step three, the ALJ concluded Plaintiff did not "have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" AR 1686.

**D. RFC DETERMINATION**

The ALJ found Plaintiff had the RFC "to perform light work[[5]]," with the following limitations:

> Claimant could lift and/or carry twenty pounds occasionally, ten pounds frequently the claimant could stand or walk for six hours out of an eight-hour workday; the claimant could sit for six hours out of an eight-hour workday; the claimant could frequently handle and finger bilaterally; the claimant could occasionally climb ramps, stairs, ladders, ropes or scaffolds; the claimant could occasionally balance, stoop, kneel, crouch or crawl; the claimant could occasionally be exposed to unprotected heights, and humidity and wetness; the claimant could not be exposed to extreme cold or heat; the claimant could occasionally be exposed to vibrations.

AR 1686.

////

////

////

---

[5] "Light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 416.967(b); see also Aide R. v. Saul, No. CV 19-02069-ADS, 2020 WL 7773896, *2 n.6 (C.D. Cal. Dec. 30, 2020).

**E. STEP FOUR**

At step four, the ALJ noted that transferability of "job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568)". AR 1693.

**F. STEP FIVE**

At step five, the ALJ found that, "considering the claimant's age, education, work experience, and [RFC], there were jobs that exist in significant numbers in the national economy that the claimant could have performed." AR 1693–94. With the assistance of the VE's testimony, the ALJ found that Plaintiff would be able to perform occupations such as marker (DOT 209.587-034), office helper (DOT 239.567-010), and order caller (DOT 209.667-014). AR 1694. Accordingly, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act [("SSA")], from November 21, 2019, the alleged onset date, through December 31, 2021, the date last insured." AR 1695.

## V.

## PLAINTIFF'S CLAIMS

Plaintiff presents one disputed issue: whether the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony. Dkt. 14 at 4–20.

## VI.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

////

////

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'." (quoting Robbins, 466 F.3d at 882)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

The reviewing court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

////

////

////

////

////

////

## VII.

## DISCUSSION

### A. THE ALJ FAILED TO PROVIDE SUFFICIENT REASONS FOR DISCOUNTING PLAINTIFF'S SUBJECTIVE COMPLAINTS

#### 1. Relevant facts

##### a. Plaintiff's subjective complaints

###### 1) January 27, 2020 function report

In her January 2020 function report Plaintiff indicated her illnesses, injuries, and conditions have a widespread impact on her ability to work. AR 287. She indicated she has "muscle, chronic, sharp pain memory capacity, flashback, panic attacks trauma, drug sensitivity, anxiety and more." AR 287. On bad days she does not get up or do anything. AR 294. On good days, Plaintiff wakes up around 8:00 am, showers, attempts to brush her teeth, makes breakfast, cleans some, sometimes goes for a walk around the house, makes dinner, and is in bed around 8:30pm. AR 288, 294.

Plaintiff indicated she does not take care of anyone, or any pets. AR 288. Prior to being ill she was able to go out by herself. AR 288. She has difficulty sleeping. AR 288. Plaintiff has difficulty with her personal care; (1) she needs to dress in only loose clothing, (2) bathing is difficult due to weakness and fatigue, (3) she has difficulty doing her hair, (4) she shaves once a week, (5) she feeds herself with difficulty, and (6) has difficulty wiping after using the toilet. AR 288.

Plaintiff prepares her meals three to four times a week. AR 289. She typically makes omelets, sandwiches, soups, and rice and beans. AR 289. Preparing meals takes her about two hours due to taking breaks. AR 289. Plaintiff can wash dishes, sweep the floor, and do laundry. AR 289. She spends two to three hours due to breaks. AR 289.

Plaintiff goes outside two to three days a week. AR 290. She does not have a car, but she can drive and ride in a car. AR 290. She can go out alone. AR 290. She goes shopping once or twice a week for about an hour. AR 290. She shops in the store

for groceries and personal care items. AR 290. She doesn't currently have a checking or savings account but asserts she is able to handle such an account and count change. AR 290.

Plaintiff does not spend time with others, and when she goes out, she needs someone to accompany her.[6] AR 291. Plaintiff has problems getting along with others because she feels misunderstood and she is not social anymore because she does not trust other people. AR 292. Plaintiff indicated her illness, injuries, and conditions affect her ability to lift, walk, climb stairs, understand, squat, sit, see, follow instructions, bend, kneel, remember, use her hands, stand, talk, complete task, get along with others, reach, and concentrate. AR 292. She can walk for a mile before she needs to stop and rest for a minute. AR 292. She can pay attention for fifteen to twenty minutes. AR 292. She must read written instructions three or more times. AR 292. She does not follow spoken instructions well. AR 292. Plaintiff indicates she does not handle stress, or changes in routine well. AR 293.

**2) September 18, 2020 Adult Function Report**

Plaintiff indicated her illnesses, injuries, and conditions impact her ability to work. AR 309. They cause memory problems, difficulty with concentration, anxiety, fear, fatigue, poor relationships with coworkers, panic attacks, sensitive to temperature and sounds, she cannot sit or stand for long periods of time, and she is in severe pain. AR 309. Plaintiff wakes up every morning with painful chest pain and has difficulty moving. AR 310. Pain makes sleep more difficult. AR 310. She has the following difficulties with her personal care: (1) due to balance issues she is having difficulty dressing, (2) she takes longer in the shower, (3) she shaves once a week instead of every other day, and (4) using the bathroom takes longer. AR 310. Plaintiff needs verbal reminders to take care of her personal needs, grooming, and to take medicine. AR 311.

[6] In the questionnaire, Plaintiff answered "yes" to the question "[C]an you go out alone" with respect to "[g]etting around." AR 290. Plaintiff answered "yes" to the question, "Do you need someone to accompany you" for purposes of "[s]ocial activities." AR 291.

She does not prepare her own meals due to her severe chest pain. AR 311. Plaintiff's mother helps her with chores due to her severe chest pain. AR 311.

Plaintiff goes outside two to three times a week. AR 312. She does not go out alone due to medication side effects. AR 312. Plaintiff watches television and does aqua-therapy once a week. AR 313. She speaks to people on the phone but does not go out alone because she gets irritated with herself and is on medication that makes things difficult. AR 313.

Plaintiff's conditions impact her ability to lift, stand, walk, kneel, remember, complete tasks, concentrate, follow instructions, use her hands, and get along with others. AR 314. She asserts she is not in the condition to do physical exercise due to chest pain. AR 314. Plaintiff can walk for fifteen minutes before needing a three-to-five-minute break. AR 314. She can pay attention for three to four minutes. AR 314. Plaintiff can follow written instructions after re-reading them three or four times. AR 314. She cannot handle stress anymore. AR 314. She does not handle change in routine well, and is afraid of physical chest pain. AR 315.

**3) September 2019 hearing**[7]

At a September 2019 hearing, Plaintiff testified as follows. Plaintiff last worked as a registered dental assistant in 2016. AR 1755. She worked in the field for well over twenty years. AR 1755. She stopped working due to difficulties in concentrating and pain. AR 1755–56. Plaintiff has trouble with her lower back, chest, back, arm, legs, tingling and pain all over her body. AR 1758. She also has difficulty with cold. AR 1758. Plaintiff testified she has difficulty concentrating due to pain, and must re-read instructions to understand them. AR 1758–59.

Plaintiff has flares, where her body gets cold, she is nauseous, she is in such extreme pain she cries. AR 1760. Plaintiff experiences numbness and tingling very often, and is weak three to six times a week. AR 1761. She can stand continuously for

[7] See note 2, above.

about thirty minutes. AR 1761. Plaintiff could only sit continuously for twenty to thirty minutes due to a burning sensation. AR 1761. She can walk for an hour if she does not have any pain or flares. AR 1761. Her hands are so weak that she drops things, but when they are really weak, she cannot move them. AR 1763.

**4) November 2024 hearing**

On, November 6, 2024 Plaintiff, represented by counsel, attended a telephonic hearing telephonically before the ALJ. AR 1728–29. Plaintiff testified her condition has worsened, and she has to push herself to get things done. AR 1735. She testified that prior to December 31, 2021 she could stand for about ten to fifteen minutes then would need to rest for twenty to thirty minutes. AR 1735. Her mother assisted her with finishing cooking and other things around the house. AR 1738. Plaintiff indicated that prior to December 31, 2021 she had difficulty sitting for more than thirty minutes. AR 1743.

**b. ALJ's decision**

The ALJ found that the claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 1689. However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms" inconsistent with medical evidence and other evidence in the record. AR 1689. The ALJ found that while Plaintiff alleged fatigue and fibromyalgia symptoms were severe enough to prevent full time employment, Plaintiff's "treatment records do not support the level of severity alleged by [Plaintiff]." AR 1688.

The ALJ noted Plaintiff's treatment records contain limited documentation of her reports of fatigue and fibromyalgia flares and "routine and grossly conservative treatment for her fibromyalgia during the period at issue," with no documentation of multiple fibromyalgia flares a week. AR 1689. The ALJ also discussed medical opinions within the record. AR 1692–93. Two independent medical opinions concluded Plaintiff could perform at least light work. AR 1692–93. However, the ALJ added certain limitations: "no exposure to temperature extremes, no more than frequent

handling/fingering bilaterally and no more than occasional postural activities . . . ." AR 1693. When adding this limitation, the ALJ noted Plaintiff had alleged her fibromyalgia flares were triggered by being exposed to cold temperatures and exertion. AR 1693.

**2. Applicable law[8]**

A claimant carries the burden of producing objective medical evidence of his/her impairment(s) and a showing that the impairment(s) could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the burden has been met, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of [his/her] pain") (citation omitted)).

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by

---

[8] Before the ALJ's decision, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020); see also R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating SSR 16-3p "implemented a change in dictation rather than substance").

providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her contact; (3) the claimant's daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he or she complains. Thomas v. Barnhart, 278 F.3d 947, 958–59 (9th Cir. 2002) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

**3. The ALJ Failed to Provide Clear and Convincing Reasons Supported by Substantial Evidence**

Plaintiff contends the ALJ did not give clear and convincing reasons to dismiss her testimony. Dkt. No. 14 at 4–20. Defendant asserts the ALJ properly considered Plaintiff's subjective symptom testimony when he found the testimony was not entirely consistent with the medical and other evidence of the record. Dkt. No. 15 at 2–9. As the ALJ did not make a finding of malingering (AR 1682–95), he must express clear and convincing reasons for his determination. Benton, 331 F.3d at 1040.

The ALJ reviewed Plaintiff's medical records and subjective statements and determined her medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." AR 1686–93.

////

**a. Lack of objective medical support**

**1) Additional relevant law**

An ALJ may not discredit testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Reddick, 157 F.3d at 722 (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991)). "Rather, the ALJ must identify what testimony is not credible and what evidence undermines [the plaintiff's] complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). An ALJ must be particularly careful in rejecting testimony regarding fibromyalgia symptoms for being unsupported by objective medical evidence because fibromyalgia "is diagnosed entirely on the basis of patient's reports of pain and other symptoms," and "there are no laboratory tests to confirm the diagnosis." Benecke v. Barnhart, 379 F.3d 587, 590 (9th Cir. 2004). In fact, it is normal for individuals with fibromyalgia to have strength and reflexes that are normal. Revels v. Berryhill, 874 F.3d 648, 646 (9th Cir. 2017). Furthermore, the "symptoms of fibromyalgia wax and wane" and a person my have "bad days and good days." Id. at 657 (internal quotation marks omitted). Accordingly, ALJs who fail to construe medical evidence in the context of fibromyalgia's unique symptoms commit error. Id. at 662.

A. Analysis

The ALJ found that the records did not demonstrate that Plaintiff would be unable to perform a range of light exertion, with limitations. AR 1686. The ALJ ostensibly "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in accordance with 20 C.F.R. § 404.1529. AR 1686. Although consistency with objective medical evidence is indeed a factor that an ALJ is permitted to consider, it cannot be the ALJ's sole reason for rejecting a claimant's statements about her symptoms. 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical

evidence does not substantiate your statements."); see also Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while a claimant's subjective statements about symptomology "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor").

The decision denying benefits is fairly lengthy. AR 1686–93. In one introductory paragraph, the ALJ does repeatedly state that "the record as a whole is consistent with" and "supports a determination that claimant could have performed a less than full range of work." AR 1689. As described above, however, the only specific symptom this paragraph addresses is "reports of fatigue and fibromyalgia flares," while noting that Plaintiff's treatment records "contain limited documentation" and "do[] not describe the severity of claimant's flares." Id. The subsequent bulk of the decision consists of a long summary of the medical record. AR 1689–92. This recitation of the record contains no analysis or reasoning as to how these records contradict Plaintiff's subjective testimony or specific symptoms. Although the decision does describe several specific medical records, it does not make particular findings as to which of those records pertain to which of Plaintiff's subjective complaints, let alone how those specific records conflict with Plaintiff's symptom-specific testimony. This does not suffice. "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony. The evidence upon which the ALJ relies must be substantial." Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (internal citation to Reddick, 157 F.3d at 722 , omitted); Lester, 81 F.3d at 834 ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). As stated above, this is particularly true with respect to fibromyalgia claims. Benecke, 379 F.3d at 590. An ALJ cannot, as here,

simply restate the medical record at length and rely on this Court to determine what evidence in the record might support the ALJ's credibility determination. Orn, 495 F.3d at 630.

Because the ALJ here did not provide a "specific, clear, and convincing" reason for discrediting Plaintiff's subjective symptoms based on the record, the decision denying benefits must be reversed. Trevizo v. Berryhill, 862 F.3d 987, 100–1001 (9th Cir. 2017).

## VIII.

## RELIEF

### A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed'." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that [c]laimant is entitled to benefits.").

### B. ANALYSIS

Here, remand for further proceedings is warranted. The ALJ's assessment of Plaintiff's subjective complaints about her symptoms and limitations is intertwined with consideration of the medical evidence and ultimately the fashioning of the RFC. Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003).

## IX.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Order. **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: July 31, 2026

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge